**In re James E. MITCHELL and Sara Jane Mitchell, d/b/a Leisure Time Products, Debtors.**

Bankruptcy No. 379–00699 M–7.

United States Bankruptcy Court, N.D. Texas, Dallas Division.

March 1, 1985.

*Dahlquist,* 40 B.R. at 971.

Roger D. Sanders, P.C., Sherman, Tex., for debtors.

Robert S. Leithiser, Dallas, Tex., for Bank.

## MEMORANDUM OPINION REGARDING DEBTORS' MOTION TO REOPEN

ROBERT C. McGUIRE, Bankruptcy Judge.

James E. and Sara Mitchell, d/b/a Leisure Time Products, ("Debtors") filed a Motion to reopen the estate. Preston State Bank ("Bank") objected to the reopening and its inclusion on the schedules as a creditor. Such inclusion would effectively discharge Debtors' obligation to Bank unless Bank filed an objection to discharge under a permitted extension.

The debtors in the instant case filed their Chapter 7 petition on December 7, 1979. The debtors listed $50,902 on the schedules as assets, $1,775 as the amount of priority claims, $10,433 for the amount of secured claims, and $79,827 for the total amount of unsecured claims. Debtors listed fifty-one (51) creditors (but not Bank) on their schedules. The case was designated a no-asset bankruptcy and the creditors received nothing upon discharge of debtors on April 25, 1980.

Bank obtained a judgment against debtors on May 3, 1974 for $2,588.91, plus interest and costs. In 1984, Bank instituted collection on its 1974 judgment by a garnishment. On August 7, 1984, Debtors moved to reopen this case to amend their schedules to add Bank's judgment because debtors' former attorney did not originally list Bank. Bank's action was instituted shortly before Debtors' Motion to reopen to amend their schedules. By November, 1984 Order (corrected on December 26, 1984), the Court granted Debtors leave to reopen their case and amend their schedules to include Bank, and granted Bank additional time to file an objection to Debtors' discharge.

Testimony on September 20, 1984, revealed that Debtors had assumed their prior attorney had listed Bank's judgment on their schedules, but he had not. When

such oversight came to their attention through the Bank's collection efforts in 1984, Debtors attempted to reopen the case through the present Motion which was filed by a new attorney. There was no evidence that the debtors in this case omitted Bank from their schedules through fraud or intentional laches, or out of an attempt to cause delay. It is undisputed that the creditor was omitted through inadvertance.

Rule 5010 of the Bankruptcy Rules, effective August 1, 1983, provides "A case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code." 11 U.S.C. § 350(b) provides "A case may be reopened in the court in which such case was closed ... to *accord relief to the debtor*" [emphasis added]. The standards for reopening bankruptcies in the Fifth Circuit was originally set out in *Robinson v. Mann*, 339 F.2d 547 (5th Cir.1964). *Robinson, supra*, held that an amendment by the debtor more than six months after the first creditors' meeting would be allowed, but only in exceptional circumstances appealing to the equitable discretion of the court. *Robinson, supra*, 339 F.2d at 550. The Fifth Circuit listed several factors for consideration by lower courts in ruling on a motion to reopen. These factors include

> [T]he circumstances attendant to the failure of counsel to have originally listed the creditor, the degree of disruption which would result from allowing the amendment and whether the creditor would be prejudiced thereby.

*Robinson, supra*, 339 F.2d at 550.

The policy underlying both *Robinson* and the subsequently enacted Rule 5010 is clear—to provide Bankruptcy Courts with discretion to resolve the conflicting rights of a debtor entitled to a fresh start financially, as was stated by the Supreme Court in *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934), and of the creditor entitled to notice of the bankruptcy filing so that he may scrutinize all previous financial transactions. Moreover, continued reopening of previously closed cases can burden the courts unnecessarily.

Thus, the *Robinson* rule, as impacted by Rule 5010 of the Bankruptcy Rules, provides courts with discretion to weigh the conflicting rights of debtor and creditor and examine the evidence presented.

■ Case law reveals various factors to be considered. These include whether reopening the case and allowing the creditor sufficient time to object to discharge will place him in approximately the same position he would have been had he been listed on the original schedule; the creditor's collection efforts subsequent to discharge; the debtor's knowledge, either actual or constructive, of the debt at issue both prior to filing and subsequent to discharge; and the burden to the debtor of assuming the omitted debt.

Two cases bear directly on the instant case and merit discussion, to wit: *In re Souras*, 19 B.R. 798 (Bankr.E.D.Va.1983) and *In re Castleberry*, 3 B.C.D. 6 (N.D.Ga. 1977). Both cases were decided under Rule 515, the predecessor to Rule 5010. *See, Matter of Montney*, 17 B.R. 353, 355 (Bankr.E.D.Mich.1982).

The Court in *In re Souras, supra*, ruled that unintentional omission of the creditor from the original schedules constituted sufficient grounds to reopen the case and amend the schedules. The dispute in *Souras* centered on an omitted debt which arose by virtue of a lease, a copy of which was given by the debtor to the attorney, who was to include all liabilities on the schedules prior to filing the bankruptcy. The bankruptcies in *Souras* were no-asset cases which would have yielded no payment to the creditor had the debt been originally on the schedule. Accordingly, the court allowed the debtors to amend their original schedules and stated at page 801:

> Absent the showing of any real harm to the creditor or design on the bankrupt's part to defraud or cause delay, courts should not deny bankrupts the opportunity to amend their schedules solely because of a speculative procedural harm to the creditor. *In re Callaham*, 3 B.C.D. 501, 502 (Bkrtcy.Or.1977). The real harm mentioned here is the harm

that would arise out of the creditor's failure to share in a distribution of the bankrupt's estate or to be able to object to a discharge or file a complaint to determine dischargeability of its debt.

In the case of *In re Callaham, supra,* the court did award attorney fees to creditor, but at the hearing on September 20, 1984, no testimony was offered on the attorney fees incurred by the bank creditor.

*In re Castleberry,* 3 B.C.D. 6 (Bankr.N. D.Ga.1977), decided under Rule 505, also focused on the actual harm to the creditor, thereby following the holding in *Robinson.* In *Castleberry, supra,* no assets were distributed to creditors upon discharge of the debtor. The Court, therefore, allowed the debtor to reopen and amend his schedule because reopening would not place the creditor in any worse position than had the list of creditors been complete. *Castleberry, supra,* 3 B.C.D. at 7. Both *Castleberry* and *Souras* returned the parties to their original position, assuming the debt had not been omitted, to determine prejudice to the creditor.

In the case of *In re Benak,* 374 F.Supp. 499 (D.Neb.1974), the court discussed *In re Robinson,* and stated at page 500:

> ... The exceptional circumstances usually require that the case be a no-asset one; that there be no fraud or intentional laches; and that the creditor was omitted through mistake or inadvertence. 1A Collier on Bankruptcy ¶ 7.12. Consideration should also be given to the closeness of the running of the six month period to when the amendment is sought.

In the case of *In re Hood,* 44 B.R. 775, 12 B.C.D. 507 (Bankr.N.D.Ala.1984), 44 B.R. at p. 776, 12 B.C.D. at p. 507, the court stated:

> In considering whether to exercise its discretion to reopen the above-styled case the Court has relied upon the 'exceptional circumstances' test, which requires that the case be a no-asset case, that there be no fraud or intentional laches, and that the creditor has been omitted through mistake or inadvertence ...

*See also Matter of Stark,* 717 F.2d 322 (7th Cir.1983).

A second fact must be analyzed. The creditor received a discharge in April, 1980, but no collection efforts by the creditor occurred until 1984, when it instituted post judgment garnishment proceedings. The court in *In re Towns,* 16 B.R. 949 (Bankr.N.D.Iowa 1982) ruled on three consolidated cases in which the debtors attempted to reopen their bankruptcies to void liens under 11 U.S.C. § 522(f). The *Towns* court allowed reopening one case in which the debtor filed the motion to reopen prior to any action by the creditor. However, the *Towns* court refused to reopen the other two cases because the creditors filed replevin actions prior to the debtor's motion to reopen. Policy considerations involved in voiding liens under 11 U.S.C. § 522 may somewhat distinguish *In re Towns* from the present case. However, strictly looking at the *Towns* approach for reopening considerations, the *Towns* court essentially proposed a courthouse race to determine whether to reopen a bankruptcy, *i.e.,* whoever got to the courthouse first after bankruptcy determines who wins on the motion to reopen. While such a test has certain objective appeal, it places too much emphasis on only one factor under consideration. Such a test gives the court inadequate discretion to review all attendant circumstances. If testimony on the creditor's attorney fees (incurred on a suit filed prior to a motion to reopen) is presented by the creditor on the motion for reopening (*See In re Callaham, supra* ), the court could, if appropriate, consider, as one alternative, reimbursing the creditor its reasonable actual out-of-pocket loss as opposed to full recovery on an otherwise equitably barred debt. *See. Noble v. Yingling,* 37 B.R. 647 (D.C.D.Del.1984), where the court specifically discussed the creditor's modest attorney fees as not showing prejudice to the creditor. Therefore, a more appropriate standard, and clearly more in line with *Robinson,* is whether the creditor's collection efforts have resulted in sufficient expenditures to show the creditor would be prejudiced by reopening the case. No such

evidence was presented in the instant case. The holding in *In re Moser*, 27 B.R. 144, 146 (Bankr.E.D.N.Y.1983) is more closely aligned with the *Robinson* standard. *Moser* analyzed the actual prejudice accruing to the judgment lien holder from reopening. Although the judgment lien holder in *Moser* apparently did not attempt to collect on its judgment, the court focused on who was prejudiced by reopening, rather than who filed first.

Bank cited four cases in support of its opposition to reopening the bankruptcy. Those cases include: *Ford Motor Credit Co. v. Weaver*, 680 F.2d 451 (6th Cir.1982); *In re Brown*, 27 B.R. 151 (Bankr.N.D.Ohio 1982); *In re Lorenzen*, 21 B.R. 129 (Bankr. N.D.Ohio 1982), and *Matter of Swain*, 21 B.R. 594 (Bankr.D.Conn.1982). The opinion in *Weaver, supra,* may be dispensed with summarily because the court was only concerned with dischargeability of a non-scheduled debt. No motion to reopen was involved.

The remaining three cases, however, involve similar circumstances. All three courts refused to allow the debtor to reopen the case to amend his schedules. All three courts cite *Milando v. Perrone*, 157 F.2d 1002, 1004 (2nd Cir.1946) to support their decision. *Milando* advocates a *per se* rule against reopening to amend a schedule, and accordingly, is contrary to the *Robinson* holding which remains binding in the Fifth Circuit. The *Robinson* holding granted Bankruptcy Courts discretion to determine whether to reopen.

The decisions also point to 11 U.S.C. § 523(a)(3) ("§ 523(a)(3)") derived from § 17a(3) of the Bankruptcy Act, as statutory support for their refusal to reopen. However, Bankruptcy Rule 5010 provides an express exception to § 523(a)(3) and thus should be harmonized with § 523(a)(3) to give both provisions full effect. *In re Zibro*, 35 B.R. 875 (Bankr.S.D.Fla.1983); *In re Hood*, 44 B.R. 775, 12 B.C.D. 507 (Bankr. N.D.Ala.1984). The better statutory interpretation of the two sections recognizes that, although debts not listed on the schedules in a timely fashion are not dis-charged, a court may allow a case to be reopened for cause including "... accord[ing] relief to the debtor ..." (11 U.S.C. § 350(b), Bankruptcy Rule 5010) when justified by exceptional circumstances as defined in *Robinson v. Mann, supra,* and subsequent cases.

The underlying policy of § 523(a)(3) is to require debtors to use diligence in listing creditors; however, a *per se* rule forbidding reopening of cases when circumstances warrant reopening appears neither wise nor correct as a matter of law. The *Souras* court characterized the position advocated by these cases as a minority position and unpersuasive. *Souras, supra,* at 802.

For the foregoing reasons, the bankruptcy case was reopened for the limited purpose of permitting amendments of the Debtors' schedules to add Bank's judgment. Bank was granted additional time to file a complaint under 11 U.S.C. § 523 or 11 U.S.C. § 727.